UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES,

    Plaintiff,

  v.

DONNA ANDERSON, et al.,

    Defendants.

CASE NO. C05-1576JLR

ORDER

This matter comes before the court on Plaintiff United States' motion for summary judgment (Dkt. # 36) against Defendant Donna Anderson. Having reviewed the papers submitted by the parties, for the following reasons, the court GRANTS the motion for summary judgment against Ms. Anderson.

## I. BACKGROUND

This lawsuit was brought by the United States on behalf of the United States Department of Agriculture Farm Service Agency ("FSA") (formerly Farmers Home Administration) to foreclose three real estate mortgages and a security agreement executed in favor of FSA by Ms. Anderson.

ORDER – 1

On or about December 20, 2000, Ms. Anderson executed and delivered to FSA a 40-year installment note in the amount of $200,000 secured by a mortgage on real property located in Whatcom County, Washington. (Declaration of Mike Mykines (Dkt. # 37) ("Mykines Decl.") ¶ 1.) The loan proceeds were used to repurchase the real property from a lender who had foreclosed on the property. (*Id.*) On that same day, Ms. Anderson executed and delivered to FSA a seven-year installment note in the amount of $34,300 secured by a mortgage on the same real property in Whatcom County. (Mykines Decl. ¶ 2.) On November 29, 2000, in order to further secure the loans, Ms. Anderson executed a security agreement in favor of FSA on six pieces of farm equipment. (Mykines Decl. ¶ 4.) On or about January 2, 2001, Ms. Anderson executed and delivered to FSA a note in the amount of $15,540 due and payable on or before January 2, 2002 also secured by a mortgage on the same real property in Whatcom County. (Mykines Decl. ¶ 3.) The terms of the mortgages required, among other things, that Ms. Anderson pay promptly when due any indebtedness and pay all taxes assessed against the property. (*See* Mykines Decl., Exs. 2, 4, 6.) Further, under the terms of the agreements, if Ms. Anderson defaulted, the government could immediately declare the entire amounts of the notes payable. (*See id.*) Additionally, default under one mortgage with FSA would constitute default under all mortgages with FSA. (*See id.*)

Ms. Anderson defaulted on all three loans. (Mykines Decl. ¶ 6.) Ms. Anderson made periodic payments on the $200,000 loan between January 2001 and May 2002 totaling $14,140. (*Id.*) On the $34,300 loan, periodic monthly payments were made between January 2001 and July 2002 totaling $6,273. (*Id.*) On the $15,540 annual operating loan, one payment was received on July 17, 2002 in the amount of $1,700. (*Id.*) As of May 14, 2008, no further payments from Ms. Anderson had been received. (*Id.*)

ORDER – 2

As of May 1, 2002, Ms. Anderson's FSA loans were over 90-days delinquent. (Mykines Decl. ¶ 8.) Ms. Anderson received two copies of the "Notice of Availability of Loan Service and Debt Settlement Programs for Delinquent Farm Borrowers," one on May 1, 2002 and another on June 5, 2002. (Mykines Decl. ¶ 8, Exs. 10-13.) These notices included a summary of loan servicing options and application forms. (*See* Mykines Decl., Exs. 10, 12.) Ms. Anderson was given 60 days to notify FSA if she wanted to be considered for the programs. (*Id.*) On August 1, 2002, Ms. Anderson asked for a 60-day extension of the deadline due to injuries she had suffered in a fall two months prior and recent hospitalizations for serious injuries. (Mykines Decl., Ex. 14.) On August 19, 2002 the request was denied. (Mykines Decl., Ex. 15.)

On August 21, 2002, Ms. Anderson was sent "Notification of Intent to Accelerate or Continue Acceleration of Loans and Notice of Your Rights." (Mykines Decl. ¶ 11, Ex. 16.) The notice explained that the acceleration was happening because of Ms. Anderson's failure to ask for or to accept the offer of primary loan service programs. (Mykines Decl., Ex. 16.) The notice contained an explanation of Ms. Anderson's appeal rights. (*See id.*) In a letter dated September 18, 2002, Ms. Anderson appealed the decision to deny her request for an extension. (*See* Mykines Decl., Ex. 17.) On November 21, 2002, the National Appeals Division for the United States Department of Agriculture issued a decision in Ms. Anderson's favor. (*See* Mykines Decl., Ex. 21.) It concluded that "[t]he agency decision to continue with the acceleration of the appellant's account was erroneous." (*Id.*)

On December 18, 2002, FSA sent a letter to Ms. Anderson confirming a telephone conversation where the parties agreed that Ms. Anderson would send in a completed application for loan servicing on or before January 3, 2003. (Mykines Decl., Ex. 22.) By letter dated January 3, 2003, Ms. Anderson requested another extension of time.

ORDER – 3

(Mykines Decl., Ex. 23.) Ms. Anderson's request was granted and she was given until January 24, 2003 to submit her application. (*See* Mykines Decl., Ex. 24.) On January 24, 2003, Ms. Anderson submitted an application for direct loan assistance which FSA contends was incomplete.[1] (Mykines Decl. ¶ 19, Ex. 25.) FSA requested additional information from Ms. Anderson on January 28, 2003 and again on February 11, 2003. (*See* Mykines Decl., Exs. 26-27.) On February 21, 2003, Ms. Anderson provided additional information consisting largely of copies of documents previously provided to FSA. (*See* Mykines Decl., Ex. 29.) The documents included some, but not all of the requested information.

On March 26, 2003, FSA attempted to complete Ms. Anderson's application for her using her income tax returns and other available information to develop a plan. (Mykines Decl. ¶ 21.) "FSA moved forward and performed much of the work that was required of Anderson, not because it was required of FSA by any laws or regulations, but out of compassion to help this woman keep her farm . . . FSA had taken on Anderson's responsibility, as well as performing its own role." (*Id.*) Using the information that it had, FSA ran a preliminary Debt and Loan Restructuring System ("DALR$") analysis. (*Id.*) The DALR$ analysis uses a number of inputs to attempt to find a combination of loan service programs that will result in a feasible plan. (*Id.*) The analysis showed no plan feasibility. (*See* Mykines Decl. ¶ 21, Ex. 30.)

FSA next ordered a real estate appraisal in an attempt to determine the market value of the property and whether "a debt writedown to net recovery would result in a feasible plan." (Mykines Decl. ¶ 22.) The appraisal transmitted via letter on September 2, 2003 valued the property at $210,000 and noted that Ms. Anderson's blueberries,

---

[1] The copy of the application provided by the government is illegible. It is impossible for the court to determine whether or not the application is complete.

ORDER – 4

allegedly her main crop, were "heavily infested with brambles and other noxious weeds and are considered to be non-viable." (Mykines Decl., Ex. 31.)

On October 1, 2003, FSA sent a "Notification of Adverse Decision for Primary Loan Servicing, Mediation or Meeting of Creditors and Other Options" to Ms. Anderson who received it on October 9, 2003. (Mykines Decl., Exs. 33-34.) Ms. Anderson completed and returned "Borrower's Request for Meeting of Creditors and/or Request to Negotiate the FSA Appraisal and Acknowledgment," checking the boxes next to a request for an independent appraisal, a request for a negotiation of the appraisal and a request that FSA schedule a meeting with Ms. Anderson's undersecured creditors to assist her in developing a feasible plan of operation. (Mykines Decl., Ex. 35.) Ms. Anderson also attached an appraisal of the property as of April 26, 1997. (*See id.*) In response, on November 18, 2003, FSA sent Ms. Anderson a letter explaining that a creditor meeting was not appropriate in her circumstances where even if the other creditor debt was excluded from the proposed plan, a feasible plan could not be developed. (Mykines Decl., Ex. 36.) The letter also pointed out the inadequacies in the appraisal provided by Ms. Anderson. (*Id.*) She was provided with a list of FSA approved appraisers and was notified of the date by which she needed to submit a proper appraisal. (*Id.*) FSA never received an acceptable appraisal. (Mykines Decl. ¶ 28.)

On January 8, 2004, FSA-Whatcom County sent the file to the State Office to approve a current market value ("CMV") buyout. (Mykines Decl. ¶ 29.) On January 26, 2004, the State Office denied the request to offer a CMV buyout because the information Ms. Anderson had submitted was incomplete and out of date. (*Id.*) On February 10, 2004, the State Office advised that additional information was required from Ms. Anderson to update her Farm Home Plan and that she should be given 60 days to provide the information for a complete application. (Mykines Decl., Ex. 38.)

ORDER – 5

On February 13, 2004, FSA sent a letter to Ms. Anderson requesting the additional financial information. (Mykines Decl., Ex. 39.) Via e-mail, March 26, 2004, Ms. Anderson requested additional time to provide the additional information citing the illness of her son and her son's wife. (Mykines Decl., Ex. 40.) FSA granted a two-week extension of the deadline. (*See* Mykines Decl., Ex. 41.) No financial information was received from Ms. Anderson by the deadline. (Mykines Decl. ¶ 34.)

FSA sent a "Notification of Intent to Accelerate or Continue Acceleration of Loans and Notice of Your Rights" via certified mail and regular mail on May 6, 2004. (Mykines Decl. ¶ 35, Ex. 43.) An e-mail was also sent to Ms. Anderson about the notice. (*See* Mykines Decl., Ex. 45.) The notice informed Ms. Anderson that she was $57,514.18 behind in her FSA payments and advised her of the actions she could take. (*See* Mykines Decl., Ex. 43.) In response, Ms. Anderson e-mailed FSA on May 6, 2006, stating that she was still caring for her adult son and needed additional time to provide the information. (Mykines Decl., Ex. 44.) FSA stated that it would not grant another extension. (*Id.*) Ms. Anderson responded again via e-mail stating that she would provide the information in 30 to 90 days depending on her son's health and requested another extension. (*Id.*) By e-mail dated May 12, 2006, her request for a reconsideration of the denial of her request for an extension was denied. (Mykines Decl., Ex. 45.)

On July 12, 2004, FSA sent a "Notice of Acceleration of Your Debt to Farm Service Agency and Demand for Payment of That Debt" which informed Ms. Anderson that her entire indebtedness was now due and owing. (Mykines Decl., Ex. 46.)

## II. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact. Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v.*

ORDER – 6

*County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets its burden, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Cline v. Indus. Maint. Eng'g. & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

Ms. Anderson does not contest that she signed the promissory notes or that she failed to meet the required payments. Instead she argues that summary judgment is inappropriate because the documents in support of summary judgment are incomplete, illegible and inadmissible. (Resp. (Dkt. # 42) at 2.) She also argues that there are issues of fact regarding: (1) FSA's claim that Ms. Anderson did not provide a complete application in February 2002; (2) FSA's October 1, 2002 determination that Ms. Anderson was ineligible for Primary Loan Servicing because of amounts owed to her creditors other than FSA; (3) FSA's failure to send a notice of appeal rights regarding the determination that amounts owed to her creditors other than FSA rendered her ineligible; (4) whether FSA complied with the statutory requirement for notice of ineligibility to Ms. Anderson in regards to FSA's October 2002 determination of ineligibility; (5) whether FSA properly denied Ms. Anderson's requests for extensions of time, when it requested supplemental information in 2003; and (6) whether FSA properly provided notice to Ms. Anderson of her right to appeal the May 6, 2004 determination by FSA that it would accelerate her loans. (*See id.*)

**A.     Incomplete/Illegible Documents**

Ms. Anderson first argues that summary judgment is inappropriate because the documents in support of the motion are "incomplete, illegible and inadmissible." In her declaration Ms. Anderson points out that Exhibit 25 is illegible. (Declaration of Donna

ORDER – 7

Anderson ("Anderson Decl.") at 3.) The court agrees; however, the document provides background information on the dispute between the parties and the court finds that it is not necessary for it to review the contents of Exhibit 25 for it to make a decision regarding this dispute. Referencing Exhibit 25, Ms. Anderson contends that FSA did not attach complete copies of the information that she submitted to FSA. (*Id.*) Ms. Anderson attached pages to her declaration that she claims were omitted in FSA's submission to the court. (*See* Anderson Decl., Ex. A.) Ms. Anderson contends that "additional materials" are also missing but she does not identify what those missing materials are, how they are relevant to the issues before the court, and does not attach the alleged "missing materials" to her declaration. (*See* Anderson Decl. at 3.) The government was under no obligation to attach complete copies of every document. If Ms. Anderson believed that documents necessary for a complete understanding of the issues presented in FSA's motion were either missing or incomplete, she should have attached them to her declaration.

**B.    Alleged Procedural Inadequacies**

Before FSA can accelerate a Farm Loan Program loan or take any other collection action, it "shall provide notice by certified mail to each borrower who is at least 90 days past due on the payment of principal or interest on a loan." 7 U.S.C. § 1981d(a). The notice must:

> (1) include a summary of all primary loan service programs, preservation loan service programs, debt settlement programs, and appeal procedures, including the eligibility criteria, and terms and conditions of such programs and procedures;
>
> (2) include a summary of the manner in which the borrower may apply, and be considered, for all such programs . . . ;
>
> (3) advise the borrower regarding all filing requirements and any deadlines that must be met for requesting loan servicing;
>
> (4) provide any relevant forms, including applicable response forms;

ORDER – 8

(5) advise the borrower that a copy of regulations is available on request; and

(6) be designed to be readable and understandable by the borrower.

7 U.S.C. § 1981d(b). FSA shall also "consider a farmer program borrower for all loan service programs if, within 60 days after receipt of the notice required in this section or, in extraordinary circumstances as determined by the applicable State director, after the 60-day period, the borrower requests such consideration in writing. In considering a borrower for loan service programs, the Secretary shall place the highest priority on the preservation of the borrower's farming operations." 7 U.S.C. § 1981d(e). Normally, if a borrower asks for an extension of time, such extension is not to exceed 30 days. *See* 7 C.F.R. § 1951.916(b).

7 U.S.C. § 2001(a) entitled "Debt restructuring and loan servicing," provides that the

> Secretary shall modify delinquent farmer program loans made or insured . . . to the maximum extent possible (1) to avoid losses to the Secretary on such loans, with priority consideration being placed on writing-down the loan principal and interest . . . , whenever these procedures would facilitate keeping the borrower on the farm or ranch, or otherwise through the use of primary loan service programs as provided in this section; and (2) to ensure that borrowers are able to continue farming or ranching operations.

In order to be eligible to obtain assistance "the borrower must present a preliminary plan to the Secretary that contains reasonable assumptions that demonstrate that the borrower will be able to--(A) meet the necessary family living and farm operating expenses; and (B) service all debts, including those of the loans restructured." 7 U.S.C. § 2001(b)(3) Additionally, "the loan, if restructured, must result in a net recovery to the Federal Government, during the term of the loan as restructured, that would be more than or equal to the net recovery to the Federal Government from an involuntary liquidation or foreclosure on the property securing the loan." 7 U.S.C. § 2001(b)(4). Foreclosure or other similar actions cannot be taken to liquidate any loan determined to be ineligible for

ORDER – 9

restructuring by the Secretary until the borrower has been given an opportunity to appeal the decision and if an appeal is taken, until the appeals process is completed and a determination has been made that the loan is ineligible for restructuring. *See* 7 U.S.C. § 2001(g).

Ms. Anderson's arguments regarding alleged procedural inadequacies should have been raised in an appeal of FSA's decision finding her loan ineligible for restructuring. Therefore, the first issue that the court will address is whether FSA properly provided Ms. Anderson with notice of her appeal rights when it determined that it would accelerate her loans by notice dated May 6, 2004. Ms. Anderson submits a sworn declaration that the "correspondence dated May 6, 2004, was never received by me . . . . The lack of a proper record of mailing is not surprising to me since I know I never received this notice." (Anderson Decl. at 7-8.) In reference to a series of e-mails between Ms. Anderson and FSA regarding the notice, Ms. Anderson declares: "In none of th[o]se emails does [FSA] advise me clearly of the fact that the FSA has now determined to accelerate my loan and foreclose . . . ." (Anderson Decl. at 7.) She contends that FSA failed to comply with 7 C.F.R. § 1951.907 which provides: "In those instances where the applicable notice is sent certified mail, and the certified mail is not accepted by the borrower, the County Supervisor will immediately send the documents from the certified mail package to the borrower's last known address, first class mail." In response the government argues that Ms. Anderson does not dispute the fact that she was sent the May 6, 2004 notice by first-class mail or that she had e-mail correspondence with FSA on the date the notice was sent regarding the notice. (Reply (Dkt. # 43) at 3.)

The court finds that FSA complied with the law and regulations in providing Ms. Anderson notice, in the May 6, 2004 letter, of its intent to accelerate her loans. Mark Turner, the individual at FSA responsible for sending the notice submitted a declaration

ORDER – 10

stating that he sent, "by *both* regular and certified mail, an adverse decision, expressly providing her account would be accelerated due to her failure to submit information necessary to determine the servicing options available and whether a feasible plan could be developed, and giving her 30 days to appeal my decision to NAD." (Declaration of Mark Turner (Dkt. # 44) ("Turner Decl.") ¶ 24.) The copy of the notice sent by certified mail was returned as unclaimed. (Turner Decl. ¶ 25.) The copy of the letter sent by first class mail was not returned to Mr. Turner. (*Id.*) Although Mr. Turner did not wait for the certified letter to be returned before sending the notice via regular mail, pursuant to 7 C.F.R. § 1951.07, Ms. Anderson cannot point to any prejudice she suffered as a result of the contemporaneous mailing. At the most, Ms. Anderson would have been given a few extra weeks to respond to the notice. She does not argue that she would have broken her pattern of continually asking for extensions by actually using that time productively and submitting a notice of appeal. By this time, Ms. Anderson had been given almost two years to submit a complete application. Additionally, even though not required and not in and of itself enough to provide notice, FSA provided notice of its intent to accelerate by e-mail. (*See* Mykines Decl., Ex. 45.) True to form, Ms. Anderson asked for additional time to respond to FSA's requests and purported to set her own timetable for when she would respond. (*Id.*) At this point FSA had fulfilled its obligation to assist Ms. Anderson in retaining her farm.

Having determined that FSA properly provided notice of its intent to accelerate her loans, the court need not address Ms. Anderson's remaining arguments which all relate to actions FSA took leading up to its May 6, 2004 notice. These are arguments that should have been, but were not, raised in an administrative appeal of FSA's decision. Even if the court were required to address those arguments, which it is not, the court finds that they are without merit.

ORDER – 11

### III. CONCLUSION

For the foregoing reasons the court GRANTS the United States' motion for summary judgment against Ms. Anderson.

DATED this 6th day of August, 2008.

JAMES L. ROBART
United States District Judge

ORDER – 12